**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: BEAR CREEK TECHNOLOGIES, INC. ('722) PATENT LITIGATION | ) ) ) ) | MDL No. 12-2344-GMS |
| CHARTER COMMUNICATIONS, INC. v. BEAR CREEK TECHNOLOGIES, INC. | ) ) ) | C.A. No. 11-722-GMS |
| BEAR CREEK TECHNOLOGIES, INC. v. VONAGE HOLDINGS CORPORATION, et al. | ) ) ) | C.A. No. 11-723-GMS |
| BEAR CREEK TECHNOLOGIES, INC. v. CSC HOLDINGS, LLC | ) ) ) | C.A. No. 11-724-GMS |
| BEAR CREEK TECHNOLOGIES, INC. v. MEDIACOM COMMUNICATIONS CORPORATION, et al. | ) ) ) ) | C.A. No. 11-725-GMS |
| BEAR CREEK TECHNOLOGIES, INC. v. QWEST COMMUNICATIONS INTERNATIONAL, INC., et al. | ) ) ) ) | C.A. No. 11-726-GMS |
| BEAR CREEK TECHNOLOGIES, INC. v. T-MOBILE USA, INC. | ) ) ) | C.A. No. 11-727-GMS |
| BEAR CREEK TECHNOLOGIES, INC. v. AT&T INC., et al. | ) ) ) | C.A. No. 11-729-GMS |
| BEAR CREEK TECHNOLOGIES, INC. v. TIME WARNER CABLE, INC., et al. | ) ) ) | C.A. No. 11-730-GMS |
| BEAR CREEK TECHNOLOGIES, INC. v. COX COMMUNICATIONS, INC., et al. | ) ) ) | C.A. No. 12-565-GMS |

## <u>BRIEF IN SUPPORT OF MOTION TO STAY PENDING REEXAMINATION</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

I.  INTRODUCTION ....................................................................................................... 1

II.  BACKGROUND ......................................................................................................... 3

    A.  The Eastern District of Virginia Dismissed Bear Creek's Initial Lawsuit as Procedurally Flawed and Subsequently the Cases were Consolidated into Multi-District Litigation ("MDL") ................................................................... 3

    B.  Status of the MDL Proceeding ........................................................................ 4

    C.  The Asserted Patent ....................................................................................... 4

    D.  Overview of Inter Partes Reexamination ........................................................ 7

III.  ARGUMENT ............................................................................................................. 8

    A.  There is a "Liberal Policy" in Favor of Exercising the Court's Inherent Authority to Stay Litigation Pending PTO Reexaminations ................................. 8

    B.  The Relevant Factors Weigh Heavily in Favor of a Stay ................................. 10

        1.  A Stay is Likely to Greatly Simplify the Issues ..................................... 10

        2.  The Litigation Is at an Early Stage ....................................................... 13

        3.  A Stay Would Not Unduly Prejudice Plaintiff Nor Present Plaintiff with a Clear Tactical Disadvantage ....................................................... 14

IV.  CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott Diabetes Care, Inc. v. DexCom,*
    C.A. No. 06-cv-514 GMS, 2007 WL 2892707 (D. Del. Sept. 30, 2007) ...................10, 14

*Alloc, Inc. v. Unilin Décor N.V.,*
    No. Civ. A. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) .........................11

*Bear Creek Tech., Inc. v. RCN Communications, et al.,*
    No. 2:11-cv-103 RAJ-FBS (E.D. Va. Aug. 17, 2011) .......................................................3

*Bear Creek Tech., Inc. v. RCN Communications, et al.,*
    No. 2:11-cv-103 RAJ-FBS (E.D. Va. filed Feb. 22, 2011).............................................1, 3

*Boston Scientific Corp. v. Cordis Corp.,*
    777 F. Supp. 2d 783 (D. Del. 2011)................................................................................15

*Broad. Innovation LLC v. Charter Commc'ns, Inc.,*
    Civil Action No. 03-CV-2223-ABJ-BNB, 2006 WL 1897165 (D. Colo. July 11,
    2006) ................................................................................................................................9

*Canady v. Erbe Elektromedizin GmbH,*
    271 F. Supp. 2d 64 (D.D.C. 2002)...................................................................................9

*Digital Magnetic Sys., Inc. v. Ainsley,*
    213 U.S.P.Q. 290 (W.D. Okla. 1982) .............................................................................10

*Enhanced Sec. Research, LLC v. Cisco Sys., Inc.,*
    C.A. No. 09-571-JJF, 2010 WL 2573925 (D. Del. June 25, 2010) ........................9, 14, 16

*Ethicon, Inc. v. Quigg,*
    849 F.2d 1422 (Fed. Cir. 1988)........................................................................................8

*Ever Win Int'l Corp. v. RadioShack Corp.,*
    No. 11-cv-1104-GMS-CJB, 2012 WL 4801890 (D. Del. Oct. 9, 2012)...............13, 16, 17

*Gioello Enters. Ltd. v. Mattel, Inc.,*
    No. C.A. 99-375 GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001) ......................10, 13, 15

*Gould v. Control Laser Corp.,*
    705 F.2d 1340 (Fed. Cir. 1983)......................................................................................10

*Krippelz v. Ford Motor Co.,*
    667 F.3d 1261 (Fed. Cir. 2012).......................................................................................13

*Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*,
No. 12-cv-780-GMS, 2013 WL 443973 (D. Del. Feb. 5, 2013)......................................14

*Mission Abstract Data LLC v. Beasley Broad. Grp., Inc.,*
Civ. No. 11-176-LPS, 2011 WL 5523315 (D. Del. Nov. 14, 2011)..................................8

*Neste Oil Oyj v. Dynamic Fuels, LLC*,
Civil Action No. 12-cv-662-GMS,
2013 WL 424754 (D. Del. Jan. 31, 2013)..................................................8, 10, 12, 15, 16

*Patlex Corp. v. Mossinghoff*,
758 F.2d 594 (Fed. Cir. 1985)............................................................................................9

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
No. Civ. A. 00-cv-120-GMS, 2003 WL 21105073 (D. Del. May 14, 2003)....................10

*Round Rock Research LLC v. Dole Food Co.*,
No. 11-cv-1239-RGA, 2012 WL 1185022 (D. Del. Apr. 6, 2012)...................................15

*Textron Innovations, Inc. v. Toro Co*.,
Civil Action No. 05-486 (GMS), 2007 WL 7772169 (D. Del. Apr. 25, 2007) .......9, 12, 14

*Vehicle IP, LLC v. Wal-Mart Stores, Inc*.,
Civ. No. 10-503-SLR, 2010 WL 4823393 (D. Del. Nov. 22, 2010) .......................8, 9, 15

*Wall Corp. v. BondDesk Group LLC*,
No. 07-844-GMS, 2009 WL 528564 (D. Del. Feb. 24, 2009)....................................14, 16

*Werre v. Battenfeld Techs., Inc.*,
No. Civ. 03-1471-AA, 2004 WL 2554568 (D. Or. Nov. 9, 2004) .....................................9

**STATUTES**

35 U.S.C. § 285....................................................................................................................16

AT&T Inc., AT&T Teleholdings, Inc., Cox Communications, Inc., Cox Virginia Telecom LLC, Bright House Networks, LLC, Charter Communications, Inc., CSC Holdings, LLC, Mediacom Broadband, LLC, Mediacom Communications Corp., Qwest Communications Int'l, Inc., Qwest Communications Company, LLC, SBC Internet Services, Inc., Time Warner Cable, Inc., T-Mobile USA, Inc., Vonage America, Inc., Vonage Communications, Inc., Vonage Holdings Corp., and Vonage Marketing LLC respectfully move the Court to stay the litigation pending the final decision of the U.S. Patent and Trademark Office ("PTO") regarding the *inter partes* reexamination of U.S. Patent No. 7,889,722 ("the '722 Patent").[1] No party other than Bear Creek opposes the relief requested herein.

## I. **INTRODUCTION**

Bear Creek, a non-practicing entity, originally filed an "industry-wide" lawsuit against seventeen telecommunications providers in the Eastern District of Virginia, alleging each Defendant individually infringes the '722 Patent. *Bear Creek Tech., Inc. v. RCN Communications, et al.*, No. 2:11-cv-103 RAJ-FBS (E.D. Va. filed Feb. 22, 2011).[2] According to Bear Creek's allegations, the '722 Patent relates generally to the provision of telephony services over the Internet, a technology that was well-known at the time the patent was filed.

Bear Creek's allegations, however, were procedurally flawed and, as discussed further below, resulted in all but the first-named defendant (RCN) being dismissed from the case. As a result, Bear Creek was forced to re-assert its allegations in individual lawsuits in a number of different districts. Rather than litigate the cases to conclusion in their respective districts,

---

[1] All parties other than Bear Creek are collectively referred to as "Defendants," although Charter Communications and Comcast originally brought claims related to the '722 Patent as declaratory judgment plaintiffs.
[2] *See* February 23, 2011 Press Release, "Bear Creek Technologies Brings Industry-Wide Lawsuit on VoIP Paradigm Patent," available at http://www.cooleymanionjones.com/Press-Releases/Feb-23-2011-Press-Release.pdf and http://www.mielelawgroup.com/?p=17.

however, Bear Creek engaged in additional procedural wrangling and moved the Judicial Panel on Multidistrict Litigation to consolidate the cases for pre-trial purposes before this Court, where they have been pending since May 2012.

A formal stay is now appropriate, however, because the PTO recently determined that there are **serious questions about the patentability of all of the claims asserted against the Defendants**. Specifically, on November 28, 2012, the PTO granted an *inter partes* reexamination request filed by Cisco Systems, Inc. ("Cisco"), which is not a party to this litigation, and found that numerous previously undisclosed prior art references "establish[] that there is a reasonable likelihood that the Requester will prevail with respect to" its challenge to the claims asserted against Defendants in these litigations. *See* Ex. 1, November 28, 2012, Order Granting *Inter Partes* Reexamination in Reexamination Control No. 95/002,190, at 10, 22, 30, 40. In particular, the reexamination request focused on a claim limitation, which Cisco referred to as "the 'convert-before-discriminate' limitation," that the applicant emphasized to obtain allowance in the original prosecution and prior *ex parte* reexaminations. *See id.* at 16. Because this prior art invalidates all claims of the '722 Patent, it is expected that the *inter partes* reexamination of the '722 Patent will resolve this dispute in its entirety without the need for further litigation. Even if the reexamination does not eliminate all of Bear Creek's claims against Defendants, reexamination could narrow or eliminate issues from the case.

A formal stay would maintain the status quo. These cases are in their infancy—the Defendants have responded to Bear Creek's complaints but no discovery or other proceedings have occurred in any of the cases (except the cases against Verizon and Aptela) and no Scheduling Order has been entered. A stay now will, therefore, allow the Court and the parties to avoid having to invest substantial resources to litigate the scope, application, and validity of

the '722 Patent while the scope and validity of the patent are also being reconsidered by the PTO. Moreover, Bear Creek, which has been attempting to use this period of inactivity to its benefit, would not be prejudiced by a formal stay of these proceedings, as it does not make or sell any products, is not a commercial competitor of any of the defendants, and therefore can be fully compensated by monetary damages. Thus, a stay at this point in the litigation (before the parties engage in discovery and claim construction) is in the best interest of judicial economy and the parties' resources.

## II.  BACKGROUND

### A.  The Eastern District of Virginia Dismissed Bear Creek's Initial Lawsuit as Procedurally Flawed and Subsequently the Cases were Consolidated into Multi-District Litigation ("MDL")

Bear Creek's initial suit targeted seventeen corporate entities in a single suit. *Bear Creek Tech., Inc. v. RCN Communications, et al.*, No. 2:11cv103 RAJ-FBS (E.D. Va. filed Feb. 22, 2011). Bear Creek later amended its complaint to add an additional six defendants and 500 "John Doe" defendants, accusing each of individually infringing the '722 patent.

Most of the defendants moved for dismissal or transfer on various grounds, including misjoinder, improper venue, lack of personal jurisdiction, and inconvenient forum. At the hearing on these motions, the district court questioned whether Bear Creek had performed an adequate pre-filing investigation and dismissed the five hundred "John Doe" defendants pursuant to Rule 11. Ex. 17, Excerpts of August 12, 2011, Hearing Transcript, at 5, 7-8. Five days later, the district court dismissed Bear Creek's claims against all defendants except the first named defendant, RCN Communications, ruling that Bear Creek had improperly joined the defendants. *Bear Creek Tech., Inc. v. RCN Communications, et al.*, No. 2:11-cv-103 RAJ-FBS (E.D. Va. Aug. 17, 2011) (# 348, Mem. Op. and Order).

Bear Creek then initiated separate lawsuits against, or had declaratory judgment actions

initiated against it by, each of the dismissed named defendants in federal courts in Virginia and Delaware. Ultimately, the case against the Cox Defendants was transferred to the United States District Court for the Northern District of Georgia. Thereafter, cases alleging infringement of the '722 Patent were pending in the District of Delaware, the Eastern District of Virginia and the Northern District of Georgia.

On January 25, 2012, Bear Creek moved to consolidate all but one of the pending cases (the case against the Verizon Defendants, in which fact discovery, claim construction briefing, and a Markman hearing were already completed) with the ten cases already pending before this Court. After a hearing before the United States Judicial Panel on Multi-District Litigation ("JPML") on March 29, 2012, Bear Creek's motion to transfer was granted and the cases were transferred here for coordination on May 2, 2012. The case against the Verizon Defendants was subsequently transferred as well on May 11, 2012.

B. **Status of the MDL Proceeding**

On January 22, 2013, this Court set a Rule 16 Scheduling Conference for March 19, 2013. No schedule is currently set in this matter, and with the exception of Bear Creek's claims against Verizon as noted above, Bear Creek's claims against the remaining Defendants are in the very early stages and no discovery has been conducted by any of those Defendants. The Court's order setting the Rule 16 Scheduling Conference also lifted all previously-issued stays that had been entered in the various actions during the pendency of proceedings before the JPML and noted that: "The parties should be prepared to file all motions or answers in a timely manner pursuant to the lifting of the stays."

C. **The Asserted Patent**

The '722 Patent generally relates to "a system for linking standard telephony communications with internet protocols." Ex. 2, '722 Pat., at Abstract. Bear Creek alleges that

the '722 Patent is relevant to "Voice Over Internet Protocol ('VoIP') technology" and that Defendants infringe "through at least the provision of the VoIP Services." See, e.g., Complaint in Case 1:11-cv-729-GMS, D.I. No. 1, at ¶¶ 2, 26. The '722 Patent contains 22 total claims, with just two independent claims.

The '722 Patent has a tortuous prosecution history. While Bear Creek now purports to bring claims related to VoIP, the '722 Patent references (but does not properly claim priority to) three earlier nonprovisional applications in which the applicant sought claims related to a different concept altogether – "an internet facsimile server." See, e.g., Ex. 3, U.S. Patent No. 6,985,494, at Claim 1.[3] It was not until October 2005, upon filing the application that became the '722 Patent, that the applicant changed course and began seeking a claim related to "a phone switch." See Ex. 4, October 18, 2005, Preliminary Amendment, at 3.

The original prosecution of the '722 Patent lasted from 2005 through 2011 and included numerous rejections, arguments, and amendments to not only the claims, but also the specification and drawings. Among these amendments, in November 2008, the applicant submitted a substitute specification with substantial new content, as well as several new drawings, both of which the applicant stated were taken from the provisional applications to which the '722 Patent (improperly) claims priority. See Ex. 5, November 4, 2008, Amendment, at 2, 7. In that same amendment, the applicant first presented the claims that, after further amendments, issued with the '722 Patent. See id. at 3-6.

The applicant eventually obtained allowance of those claims, after further amendments,

---

[3] The original claims of the earliest nonprovisional application, U.S. Patent Application No. 08/812,745, claimed a "telephony system" without reference to voice or fax. See Ex. 7, Excerpt of Original Application, at 29-30. Those claims were rejected, and the applicant sought claims related to an "internet facsimile server" from that point forward. See Ex. 8, June 20, 2000, Amendment, at 1-6.

by arguing that the claims were distinct from the cited prior art because the claims require determining the destination of a communication after the communication is converted to transmitted IP addressed media (i.e., the "convert-before-discriminate" limitations). See Ex. 6, January 27, 2010, Response, at 9. The applicant's arguments and Patent Office's analysis in a pair of related ex parte reexamination proceedings that are now concluded also focused on the "convert-before-discriminate" limitations.[4]

Finally, while the original prosecution of the '722 Patent concluded in 2011, Bear Creek has continued to attempt to modify the '722 Patent, even after initiating this litigation, through the filing of requests for certificates of correction. In particular, in September 2012, months after

---

[4] The two related (and concluded) *ex parte* reexamination proceedings are Reexamination Control Nos. 90/012,180 and 90/012,663. In the '180 proceeding, the third party requester proposed anticipation rejections over four references (U.S. Patent No. 5,742,596 to Baratz et al., U.S. Patent No. 5,881,233 to Toyoda et al., U.S. Patent No. 5,742,905 to Pepe et al., and WO 97/33412 to Thompson (the named inventor of the '722 Patent)). Ex. 11, March 8, 2012, Request for Reexamination, at 3. The Patent Office found that three of the proposed rejections – Baratz, Toyoda, and Pepe – raised a substantial new question of patentability, and the examiner subsequently issued an office action focused solely on Pepe. Ex. 12, April 26, 2012, Order Granting Request for *Ex Parte* Reexamination, at 7-10, 12-14; Ex. 13, April 26, 2012, Non-Final Office Action at 3-12. The examiner did not find a substantial new question of patentability with respect to certain teachings in the '412 WO Publication because it did not disclose claimed aspects including the "convert-before-discriminate" limitation. Ex. 12 at 10-11. In response, Bear Creek argued that Pepe did not disclose what Cisco has termed the "convert-before-discriminate" limitations, and the examiner agreed and terminated the reexamination. Ex. 14, July 26, 2012, Response to Office Action, at 9-50; Ex. 15, September 19, 2012, Notice of Intent to Issue *Ex Parte* Reexamination Certification, at 2-3. In the subsequent '663 proceeding, the third party requester presented obviousness combinations using the references previously submitted as anticipatory. Ex. 19, September 14, 2012, Request for Reexamination, at 12-13. In holding that there was no substantial new question of patentability, the Patent Office found that the cited portions of the references did not escape the Examiner's review in the '180 proceeding and were not presented in a new light or a different way than in the '180 proceeding. Ex. 16, December 6, 2012, Order Denying Request for *Ex Parte* Reexamination, at 12, 16, 21. In contrast to the '663 proceeding, Cisco's *inter partes* reexamination request specifically focuses on new references "more pertinent than the originally-considered art" that demonstrate that the "convert-before-discriminate" limitations were known. *See* Section II(C), below. And, in further contrast to the '663 proceeding, the Patent Office agreed, finding that Cisco had presented four separate sets of rejections on which it had a reasonable likelihood of prevailing. *See id.*

these cases were transferred to this Court for coordination, Bear Creek filed several petitions with the PTO seeking to correct the face of the patent in an effort to bolster its claim to an earlier priority date. See, e.g., Ex. 9, September 5, 2012, Request for Certificate of Correction; Ex. 10, February 5, 2013, Certificate of Correction.

### D. Overview of *Inter Partes* Reexamination

On September 12, 2012, Cisco, which is not a party to this litigation, filed a request for inter partes reexamination. Ex. 18, September 12, 2012, Request for Inter Partes Reexamination. The request focused on the same limitation, which Cisco referred to as "the 'convert-before-discriminate' limitation," that the applicant emphasized in the original prosecution and prior ex parte reexamination. Id. at 16. Cisco noted that the references it was presenting had not been previously considered in the original prosecution and "the newly presented prior art references are more pertinent than the originally-considered art because they disclose that media is converted to IP addressed media before it is acted upon by the discriminator, i.e., the 'convert-before-discriminate' limitation." Id. at 17.

Cisco's request proposed four separate sets of obviousness rejections, each based on a separate primary reference – U.S. Patent No. 5,742,596 to Baratz et al., U.S. Patent No. 5,604,737 to Iwami et al., U.S. Patent Publication No. 2001/0040885 to Jonas et al., and U.S. Patent No. 6,954,453 to Schindler et al. See id. at 31-32. Each set of rejections provides a separate basis for invalidating all claims of the '722 Patent. The request also addressed a flaw in the '722 Patent's priority claim, but explained that "[m]ost of the prior art references submitted with this paper—including primary references Baratz, Iwami, and Jonas—qualify as prior art, regardless of whether the '722 patent is ultimately entitled to claim priority as asserted by the Patent Owner." See id. at 18-19 (emphasis supplied).

On November 19, 2012, the Patent Office granted Cisco's reexamination request. Ex. 1.

The decision noted that "an office action will follow in due course." See id. at 1. In granting the request, the Patent Office concluded that each of the four sets of rejections proposed by Cisco independently "establishes that there is a reasonable likelihood that the Requester will prevail with respect to claims 1-22 of the '722 Patent under reexamination." See id. at 10, 22, 30, and 40. To prevail, therefore, Bear Creek will need to overcome each of the four separate grounds of rejection.

Moreover, in determining that the obviousness rejection over Schindler "establishes that there is a reasonable likelihood that [Cisco] will prevail," the Patent Office concluded that "the '722 Patent includes a defective claim for priority, which causes it to receive an effective filing date no earlier than its immediate parent's (the '808 [application]), February 3, 2004." See id. at 33. Thus, the reexamination may also provide further clarity regarding the priority claim issue.

## III. ARGUMENT

### A. There is a "Liberal Policy" in Favor of Exercising the Court's Inherent Authority to Stay Litigation Pending PTO Reexaminations

District courts possess the inherent authority to stay patent litigation proceedings pending the PTO's reexamination of a patent-in-suit. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have an inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted); *Neste Oil Oyj v. Dynamic Fuels, LLC*, Civil Action No. 12-cv-662-GMS, 2013 WL 424754, at *1 (D. Del. Jan. 31, 2013) ("The decision to stay a case lies within the sound discretion of the Court."); *Mission Abstract Data LLC v. Beasley Broad. Grp., Inc.,* Civ. No. 11-176-LPS, 2011 WL 5523315, at *2 (D. Del. Nov. 14, 2011) ("Whether or not to stay litigation pending a PTO reexamination is a matter left to the Court's discretion"); *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, Civ. No. 10-503-SLR, 2010 WL 4823393, at *1 (D. Del. Nov. 22,

2010) ("Motions to stay invoke the broad discretionary powers of the court."); *Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, C.A. No. 09-571-JJF, 2010 WL 2573925, at *3 (D. Del. June 25, 2010) ("The decision to grant or deny a stay is within the court's broad range of discretionary powers."); *Textron Innovations, Inc. v. Toro Co.*, Civil Action No. 05-486 (GMS), 2007 WL 7772169, at *1 (D. Del. Apr. 25, 2007) (granting stay; noting factors guiding the "court's discretion").

Indeed, there is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of [PTO] reexamination proceedings." *Broad. Innovation LLC v. Charter Commc'ns, Inc.*, Civil Action No. 03-CV-2223-ABJ-BNB, 2006 WL 1897165, at *4 (D. Colo. July 11, 2006) (citation omitted); *see also Werre v. Battenfeld Techs., Inc.*, No. Civ. 03-1471-AA, 2004 WL 2554568, at *1 (D. Or. Nov. 9, 2004). This is because "[t]he stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of reexamination legislation." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 606 (Fed. Cir. 1985); *see also Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002) ("Congress instituted the reexamination process to shift the burden [of] reexamination of patent validity from the courts to the PTO.").

In exercising their broad discretion, courts within this District consider three factors to determine whether a stay is appropriate: (1) whether a stay will simplify the issues for trial; (2) whether discovery is complete and a trial date set; and (3) whether granting a stay would cause the non-moving party to suffer undue prejudice. *See Vehicle IP, LLC*, 2010 WL 4823393, at *1 (citing *Enhanced Sec. Research, LLC*, 2010 WL 2573925, at *3). Each of these three factors strongly supports a stay here.

### B. The Relevant Factors Weigh Heavily in Favor of a Stay

#### 1. A Stay is Likely to Greatly Simplify the Issues

Congress enacted the original reexamination statute in 1980 to "permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation." H.R. Rep. No. 96-1307, at 3-4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460, 6463. As the Federal Circuit has explained, "[o]ne purpose of the reexamination procedure is to eliminate trial of [the validity] issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983); *see also Abbott Diabetes Care, Inc. v. DexCom*, C.A. No. 06-cv-514 GMS, 2007 WL 2892707, at *5 (D. Del. Sept. 30, 2007) (quoting *Gould* in support of decision to stay case). Likewise, courts have explained that "Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts." *Pegasus Dev. Corp. v. DirecTV, Inc.*, No. Civ. A. 00-cv-120-GMS, 2003 WL 21105073, at *2 (D. Del. May 14, 2003) (quoting *Digital Magnetic Sys., Inc. v. Ainsley*, 213 U.S.P.Q. 290, 290 (W.D. Okla. 1982)).

Indeed, staying a case pending a reexamination by the PTO:

> can streamline the litigation in a number of important ways: '(1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the reexamination may encourage a settlement without further involvement of the court, (5) the record of reexamination would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pretrial conferences and (7) the cost will likely be reduced both for the parties and the court.'

*Neste Oil*, 2013 WL 424754, at *4 (quoting *Gioello Enters. Ltd. v. Mattel, Inc.*, No. C.A. 99-375-

GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001)); *see also Alloc, Inc. v. Unilin Décor N.V.*, No. Civ. A. 03-253-GMS, 2003 WL 21640372, at *2 (D. Del. July 11, 2003) (granting motion to stay because "it is beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to claims, which, if clearly defined, would streamline discovery and subsequent litigation").

Here, the preliminary findings of the PTO establish that the parties and the Court would greatly benefit from deferring to the expertise of the PTO. Specifically, in granting Cisco's request for *inter partes* reexamination, the PTO reached several preliminary conclusions, including:

- "[T]he consideration of the Baratz and Turock references establishes that there is a reasonable likelihood that the Requester will prevail with respect to claims 1-22 of the '722 patent under reexamination." Ex. 1 at 10.

- "[T]he consideration of the Iwami, Baratz and Lindgren references establishes that there is a reasonable likelihood that the Requester will prevail with respect to claims 1-22 of the '722 patent under reexamination." *Id.* at 22.

- "[T]he consideration of the Jonas, Kubler and Iwami references establishes that there is a reasonable likelihood that the Requester will prevail with respect to claims 1-22 of the '722 patent under reexamination." *Id.* at 30.

- "[T]he consideration of the Schindler, Merritt, Kubler and Pepe references establishes that there is a reasonable likelihood that the Requester will prevail with respect to claims 1-22 of the '722 patent under reexamination." *Id.* at 40.

- "[T]he '722 patent includes a defective claim for priority, which causes it to receive an effective filing date no earlier than its immediate parent's (the '808 [application]), February 3, 2004." *Id.* at 33.[5]

Thus, the PTO has found that four separate and distinct combinations of prior art render each and every claim of the '722 Patent invalid, and that the '722 Patent is only entitled to claim

---

[5] This last conclusion is further supported by the PTO's final determination in the re-examination of the '494 Patent, *i.e.,* the '808 application and the parent of the '722 patent-in-suit, which held that the '494 Patent is at most a continuation-in-part, and thus was not entitled to claim an earlier priority date. *See* Ex. 20, Excerpt of February 12, 2009, Action Closing Prosecution in Reexamination Control No. 95/001,030.

priority back to February 3, 2004.  With respect to the invalidating combinations, if, after the reexamination proceedings are complete, even a single one of these combinations is found by the PTO to render the claims invalid, no further action by the Court would be necessary.  *See, e.g.*, *Neste Oil*, 2013 WL 424754, at *4 (noting the "reasonable chance that some or all of the '344 Patent's claims will be cancelled," considering "the PTO's adoption of all four of [defendant's] proposed grounds of rejection and its rejection of all twenty patent claims in its first office action").  Similarly, to the extent the PTO concludes that the '722 Patent is ultimately only entitled to claim priority back to 2004, it is likely that many of the Defendants would have numerous defenses based on the fact that they were practicing the accused functionality far earlier.  Thus, even assuming Plaintiff's claims survive reexamination, "reexamination could potentially make a significant difference in what needs to be tried."  *Textron Innovations*, 2007 WL 7772169, at *3.

Furthermore, the high rate of claim amendment and cancellation in *inter partes* reexamination further suggests that granting a stay here would simplify the issues before the Court.  *Id.*  For example, between November 29, 1999 (when *inter partes* reexaminations were first allowed) and June 30, 2012, 42% of granted requests have resulted in all claims being cancelled, and an additional 47% resulted in some claims being amended.  Only 11% of the time did a reexamination certificate issue with all claims confirmed.  *See* http://www.uspto.gov/patents/stats//IP_quarterly_report_June_30_2012.pdf.

These statistics demonstrate the risk of wasting significant resources if the litigation proceeds concurrently with the reexamination.  For example, if the case were to proceed, and the PTO ultimately rejects the asserted claims, all of the time and litigant- and court-resources devoted to the litigation will have been wasted.  Similarly, if the claims are amended, the

litigation proceedings will have to be repeated on the new, amended claims. Finally, even if the claims are not amended, it is possible that Bear Creek would need to make narrowing arguments to the PTO about the scope of the claims, which could also impact claim construction and limit damages. *See Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1266 (Fed. Cir. 2012) ("A patentee's statements during reexamination can be considered during claim construction, in keeping with the doctrine of prosecution disclaimer."). The only way that judicial and party resources will not be wasted is if claims emerge entirely unscathed—without amendment or narrowing argument— an unlikely scenario given the PTO's preliminary findings regarding both the invalidating prior art and the decision on the proper priority date of the '722 Patent.

Accordingly, only by granting a stay can the Court allow for the likely issue simplification and "maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims" *See Gioello Enterprises*, 2001 WL 125340, at *2 (quotation marks omitted).

### 2. The Litigation Is at an Early Stage

This case is in its infancy. The Defendants have responded to Bear Creeks' complaints, but no other proceedings have taken place: no scheduling order has been issued, no discovery has taken place, and no trial date has been set.[6] "Because Defendant's motion to stay was filed early in this case, this factor weighs strongly in favor of a stay." *Ever Win Int'l Corp. v. RadioShack Corp.*, No. 11-cv-1104-GMS-CJB, 2012 WL 4801890, at *5 (D. Del. Oct. 9, 2012) (noting that "[n]o initial disclosures have been exchanged, no Scheduling Order has been

---

[6] Before the cases were consolidated, litigation with respect to one defendant (Verizon) had proceeded to claim construction briefing, and with respect to another (Aptela) had proceeded to the exchange of proposed claim constructions. No *Markman* order issued in either case, however, and it is likely that these proceedings will need to be repeated in any event to ensure that all Defendants are able to participate, now that the cases have been transferred to this Court for coordination.

entered, no discovery has occurred, claim construction has not been briefed, and neither a *Markman* hearing nor a trial date have been set"); *see also Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, No. 12-cv-780-GMS, 2013 WL 443973, at *4 (D. Del. Feb. 5, 2013) (stage of litigation factor weighed "strongly in favor of a stay" where no conferences with the court had occurred, no schedules had been set, no substantive motions had been filed and the court had issued no substantive rulings); *Wall Corp. v. BondDesk Group LLC*, No. 07-844-GMS, 2009 WL 528564, at * (D. Del. Feb. 24, 2009) (granting stay; movant filed motion "prior to the court's scheduling conference and entry of a scheduling order" and thus "this factor weighs in favor of granting a stay").

Indeed, this Court and other courts in this District have granted motions to stay when proceedings were much further along than they are here. *See, e.g.*, *Enhanced Security Research*, 2010 WL 2573925, at *3 (granting stay; finding case was in its "early stages" where identification of fact witnesses and document production was to be completed two months prior, but interrogatories and depositions were to take place over the course of the next several months); *Textron Innovations*, 2007 WL 7772169, at *1 ("[T]his action is not the first in which a party has moved for, and the court has granted, a stay within a few months of a scheduled trial.").

"Simply put, given that this case is in its early stages and considering the ability of the PTO to narrow and simplify the issues of this case via the reexamination procedure … a stay is appropriate." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 06-cv-514-GMS, 2007 WL 2892707, at *5 (D. Del. Sept. 30, 2007).

### 3. A Stay Would Not Unduly Prejudice Plaintiff Nor Present Plaintiff with a Clear Tactical Disadvantage

In determining whether a plaintiff might be unduly prejudiced by a stay, courts within this District look to considerations such as "the timing of the reexamination request, the timing

of the stay request, the status of the reexamination proceedings, the relationship between the parties, and the related question of whether the plaintiff may be compensated through future money damages." *Neste Oil*, 2013 WL 424754, at *2 (citing *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 879 (D. Del. 2011)).  Each of these considerations weighs in favor of a stay.

First, and perhaps most importantly, Bear Creek does not make or sell any products that compete with the Defendants.  It is instead primarily a patent-holding company whose principal business is asserting patents in litigation.  As a result, staying the litigation during the reexamination will cause Bear Creek no harm.  Specifically, if the asserted '722 Patent claims are ultimately rejected by the PTO, then Bear Creek will benefit from a stay because it will not have wasted resources litigating invalid claims, or, as discussed above, claims that have been amended or subject to narrowing arguments  Alternatively, if the claims are ultimately affirmed by the PTO, Bear Creek will still suffer no prejudice from a stay because it can be fully compensated with money damages, plus any appropriate interest that accrued during the stay. *See Vehicle IP*, 2010 WL 4823393, at *2 (finding that the plaintiff was unlikely to suffer prejudice from a stay because it did not sell its own products and could be adequately compensated with money damages); *see also id.* ("Since the parties do not compete, this factor favors a stay."); *Gioello Enterprises*, 2001 WL 125340, at *2 (granting motion to stay where plaintiff did not sell or actively license goods or services related to the patent at issue); *Round Rock Research LLC v. Dole Food Co.*, No. 11-cv-1239-RGA, 2012 WL 1185022, *1 (D. Del. Apr. 6, 2012) ("Round Rock is not a competitor of the defendants, and seeks only monetary damages.  It does not appear that it will suffer any undue prejudice if the motion is granted.");

The only harm from a stay that Bear Creek could plausibly assert would be delay.  But it

is well settled that mere delay in litigation "does not, by itself, amount to undue prejudice." *Neste Oil*, 2013 WL 424754, at *2; *Wall Corp. v. BondDesk Group, LLC*, No. 07-cv-844, 2009 WL 528564, at *2 (D. Del. Feb. 24, 2009); *Enhanced Security Research*, 2010 WL 2573925, at *3 (delay in resolution of litigation "alone does not warrant a finding that Plaintiffs will be unduly prejudiced"). Indeed, this is confirmed by the fact that Bear Creek never sought a preliminary injunction. *Ever Win*, 2012 WL 4801890, at *7 ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends.").

In contrast, Defendants will be severely prejudiced if a stay is not granted. Defendants will, of course, have to incur significant litigation expenses, and such expenses are not recoverable by a defendant unless a case is later deemed to be exceptional under 35 U.S.C. § 285. Moreover, the impact of litigation on Defendants is not simply monetary. Ongoing non-practicing entity litigation imposes substantial burdens on the Defendants' many employees who could otherwise be engaged in productive business. Accordingly, the harm to Defendants weighs heavily in favor of granting a stay.

Nor does the timing of the reexamination request prejudice Bear Creek. As noted previously, the request was brought by Cisco, a third-party, in September 2012. Given that it was brought by a third party, the Defendants had no control over its timing. But regardless, the request came just after the parties had submitted their responsive pleadings and before any major substantive actions had been taken by the Court. Accordingly, this case remains in its infancy and Bear Creek will not suffer undue prejudice based on the timing of the reexamination.

The timing of this motion, likewise, does not prejudice Bear Creek. This motion comes just three months after the reexamination request was granted by the PTO, and before the

scheduling conference recently calendared by the Court for March 19, 2013. Most importantly, no discovery has been undertaken in this MDL case, and no dates have been set for a *Markman* hearing or a trial. Accordingly, a stay at this early point in the case would not unduly prejudice Bear Creek or present it with a clear tactical disadvantage. *Ever Win*, 2012 WL 4801890, at *5 (granting stay because motion to stay filed "mere months" after answer was filed, and "at a time when little substantive activity had yet occurred").

As to the status of the reexamination, the Defendants concede that it is in the early stages, in that an office action has yet to be issued by the PTO. Nevertheless, it should be forthcoming shortly given that the PTO granted Cisco's request for *inter partes* reexamination in November 2012. Moreover, if a stay is entered, the PTO will expedite the reexamination proceeding, thus minimizing the delay resulting from such a stay. *See* U.S. Pat. & Trademark Office, Manual of Patent Examining Procedure ("MPEP") § 286.04(1) (8th ed. 2010) ("Where a request for reexamination indicates . . . that litigation is stayed for the purpose of reexamination . . . all aspects of the proceeding will be expedited to the extent possible.").

Each of these timing factors establishes that Bear Creek would not suffer undue prejudice if a stay is granted.

## IV.    **CONCLUSION**

To avoid the unnecessary expenditure of the resources of the parties and the Court and to ensure that the Court has the benefit of the PTO's conclusions as to the validity of the '722 Patent in view of the four primary prior art references submitted to the PTO by Cisco, the moving Defendants respectfully request the Court to stay this case pending the final disposition of the *inter partes* reexamination of the '722 Patent.

ASHBY & GEDDES

/s/ *John G. Day*

_____

John G. Day (#2403)
Tiffany Geyer Lydon (#3950)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
tlydon@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for AT&T Inc., SBC Internet Services, Inc. and AT&T Teleholdings, Inc.*

*Of Counsel:*

Joseph P. Zammit
FULBRIGHT & JAWORSKI LLP
666 fifth Avenue
New York, NY  10103
(212) 318-3346
jzammit@fulbright.com

Daniel S. Leventhal
FULBRIGHT & JAWORSKI L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX  77010-3095
(713) 651-5151
dleventhal@fullbright.com

MORRIS, NICHOLS, ARSHT &
  TUNNELL LLP

/s/ *Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Cox Communications, Inc. and Cox Virginia Telecom LLC*

*Of Counsel:*

Susan A. Cahoon
Audra A. Dial
Michael J. Turton
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309
(404) 815-6307
scahoon@kilpatricktownsend.com
adial@kilpatricktownsend.com
mturton@kilpatricktownsend.com

Taylor Higgins Ludlam
KILPATRICK TOWNSEND & STOCKTON LLP
4208 Six Forks Road, Suite 1400
Raleigh, NC  27609
taludlam@kilpatricktownsend.com

ASHBY & GEDDES

RICHARDS, LAYTON & FINGER, P.A.

/s/ *Lauren E. Maguire*

/s/ *Anne Shea Gaza*

_____

_____

Steven J. Balick (#2114)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Jason J. Rawnsley (#5379)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
rawnsley@rlf.com

*Attorneys for Charter Communications, Inc.*

*Attorneys for CSC Holdings, LLC*

*Of Counsel:*

*Of Counsel:*

Thomas L. Duston
Kevin D. Hogg
John R. Labbe
Sarah J. Kalemeris
MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 South Wacker Drive
Chicago, IL 60606
(312) 474-6300
tduston@marshallip.com
khogg@marshallip.com
jlabbe@marshallip.com
skalemeris@marshallip.com

Benjamin Hershkowitz
R. Scott Roe
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166
(212) 351-4000
bhershkowitz@gibsondunn.com
sroe@gibsondunn.com

ASHBY & GEDDES

/s/ Lauren E. Maguire

_____
Steven J. Balick (#2114)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Mediacom Broadband, LLC and
Mediacom Communications Corp.*

*Of Counsel:*

Mitchell Lukin
Robinson Vu
Natalie Alfaro
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002
(713) 229-1234
mitch.lukin@bakerbotts.com
robinson.vu@bakerbotts.com
natalie.alfaro@bakerbotts.com

RICHARDS, LAYTON & FINGER

/s/ *Travis Hunter*

_____
Chad M. Shandler (# 3796)
Travis Hunter (#5350)
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
shandler@rlf.com
hunter@rlf.com

*Attorneys for Qwest Communications Int'l, Inc. and
Qwest Communications Company, LLC*

*Of Counsel:*

Jonathan Garwood Graves
COOLEY LLP
Reston Town Center
One Freedom Square
11951 Freedom Drive
Reston, VA 20190
(703) 456-8000
jgraves@cooley.com

RICHARDS, LAYTON & FINGER, P.A.

/s/ *Kelly E. Farnan*

_____
Kelly E. Farnan (#4395)
One Rodney Square
920 N. King Street
Wilmington, DE  19801
(302) 651-7700
rfarnan@rlf.com

*Attorneys for Time Warner Cable, Inc. and Bright House Networks, LLC*


*Of Counsel:*

Daniel L. Reisner
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000
dreisner@kayescholer.com

DUANE MORRIS LLP

/s/ *Matt Neiderman*

_____
Matt Neiderman (#4018)
222 Delaware Avenue, Suite 1600
Wilmington, DE  19801-1659
(302) 657-4920
mneiderman@duanemorris.com

*Attorneys for T-Mobile USA, Inc.*


*Of Counsel:*

L. Norwood Jameson
Matthew S. Yungwirth
John R. Gibson
DUANE MORRIS LLP
1075 Peachtree Street NE, Suite 2000
Atlanta, GA  30309
(404) 253-6900
wjameson@duanemorris.com
msyungwirth@duanemorris.com
jrgibson@duanemorris.com

SEITZ ROSS ARONSTAM & MORITZ LLP

/s/ *Benjamin Schladweiler*

_____
Collins J. Seitz, Jr. (#2237)
Benjamin Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@seitzross.com

*Attorneys for Vonage America, Inc., Vonage*
*Communications, Inc., Vonage Holdings*
*Corp., and Vonage Marketing LLC*


*Of Counsel:*

Michael J. Summersgill
WILMER CUTLER PICKERING
    HALE & DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6556
michael.summersgill@wilmerhale.com

Dated: March 1, 2013